## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| NORTHWEST MISSOURI HOLDINGS, | § | |
| INC., *et al.*,[1] | § | Case No. 15-10728 (BLS) |
| | § | |
| Debtors. | § | Jointly Administered |
| | § | |
| | § | **Hearing Date: May 13, 2015 at 10:00 a.m.** |
| | § | **Objections Due: May 6, 2015 at 4:00 p.m.** |

### TOWNES MISSOURI, INC'S MOTION TO DISMISS DEBTORS' BANKRUPTCY CASES PURSUANT TO 11 U.S.C. §§ 1112(b) AND 305(a)

Townes Missouri, Inc. ("**Townes**") hereby files its Motion to Dismiss Debtors' Bankruptcy Cases Pursuant to 11 U.S.C. §§ 1112(b) and 305(a) (the "**Motion**"). In support of this Motion, Townes would respectfully show the Court as follows:

### PRELIMINARY STATEMENT

1.      There are four undeniable facts that should guide this Court's decision on whether to dismiss this case: (i) Townes has a judgment in an amount not less than $5.1 Million; (ii) the Debtors[2] filed for bankruptcy on the eve of a hearing to appoint a receiver with the admitted primary purpose of avoiding the appointment of a receiver; (iii) the Debtors do not intend to propose a plan of reorganization; and (iv) confirmation of any plan is impossible over Townes' objection and negative vote.

2.      Courts in this circuit have made clear that when a debtor lacks a valid bankruptcy purpose and uses bankruptcy to obtain a tactical litigation advantage its

---

[1] The last four digits of their federal tax identification numbers are: Northwest Missouri Holdings, Inc. (1104); South Holt Cablevision (2604); The Oregon Farmers Telephone Company (2780); Oregon Farmers Mutual Long Distance, Inc. (8678). The location of the Debtors' corporate headquarters is: 118 East Nodaway Street, Oregon, MO 64473.

[2] Capitalized terms not otherwise defined in this Preliminary Statement shall have the meanings ascribed to them elsewhere in the Motion.

bankruptcy petition should be dismissed. The Debtors' admitted purpose of avoiding the appointment of a state court receiver and invoking the protections of the automatic stay has been held to not be a valid bankruptcy purpose. Moroever, the Debtors' admitted desire to use the bankruptcy to avoid Townes' liens is further proof that the Debtors are using bankruptcy merely as a tactical litigation advantage.

3.      At its core, this case is a two-party dispute. The Debtors' representative admitted that it was not facing pressure from any of its other creditors. Courts generally abstain in two-party disputes where relief is available in non-bankruptcy forums because resolution of those disputes has the potential to transform the bankruptcy process into a collection device, which it is not.[3] Townes' claims are over one hundred times greater than the aggregate amount of all other claims in this case. The parties have already litigated in the State Court and the State Court is prepared to appoint a receiver that will more economically and efficiently address the dispute between the parties. As such, this Court should dismiss the Bankruptcy Cases.

## JURISDICTION

4.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334 and 157(b). The Motion is a core matter within the meaning of 28 U.S.C. § 157(b)(2).

5.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory predicate for the relief sought is §§ 105(a), 305(a)(1), 349(a) and 1112(b) of the Bankruptcy Code and related Federal Rules of Bankruptcy Procedure.

---

[3] *See In re AMC Investors LLC*, 406 B.R. 478, 488 (Bankr. D. Del. 2009).

# BACKGROUND[4]

7.      On April 6, 2015 ("**Petition Date**"), Northwest Missouri Holdings, Inc. ("**NWMHI**"), The Oregon Farmers Mutual Telephone Company ("**TOFMTC**"), South Holt Cablevision ("**SHCTV**"), and Oregon Farmers Mutual Long Distance, Inc. ("**OFMLD**") (collectively, the "**Debtors**") each filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code ("**Bankruptcy Code**"). The filing of the voluntary petitions initiated the various bankruptcy cases of the Debtors ("**Bankruptcy Cases**").[5]

### A.    The Judgment.

8.      Prior to the Petition Date, the Debtors entered into a number of loan documents and agreements with Rural Telephone Finance Cooperative ("**RTFC**"), including that certain promissory notice dated September 17, 2004 in the principal amount of $7,388.889 ("**Promissory Note**").

9.      RTFC later sold and assigned its interest in the various loan documents to Townes Telecommunications, Inc., which later assigned its interests to Townes.

10.     On or about March 21, 2014, Townes sued NWMTC, TOFMTC, SHCTV and OFMLD in the Circuit Court of Holt County, Missouri ("**Missouri State Court**"). Townes later amended its petition and the Debtors answered.

11.     Townes filed a Motion for Summary Judgment, which the Debtors responded to, and on January 28, 2015, the Missouri State Court entered a Judgment in

---

[4] Townes incorporates, as if stated herein, the Background from its Objection to Debtor's Motion for Interim an Final Order: (A) Authorizing Debtors to Use Cash Collateral Pursuant to 11 U.S.C. §§ 105 and 363(c)(2); and (B) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 [Docket No. 35] ("**Cash Collateral Objection**").

[5] *In re Northwest Missouri Holdings, Inc.*, Case No. 15-10728; *In re The Oregon Farmers Mutual Telephone Company*, Case No. 15-10729; *In re Oregon Farmers Long Distance, Inc.*, Case No. 15-10730; *In re South Holt Cablevision*, Case No. 15-10731.

favor of Townes ("**Judgment**"). A true and correct copy of the Judgment is attached hereto as **Exhibit A.**

12.     Among other things, the Judgment finds that as of January 27, 2015, the Debtors owed to Townes: $4,381,846.02 in principal, with accrued interest of $728,540.96 and late fees of $82,309.21 with interest accruing at the rate of $606.44 per day. Additionally, the Judgment determined that Townes has a lien and security interest in all property and assets owned by NWMHI, TOFMTC, and SHCTV. *See* Judgment at ¶ 30.

13.     After obtaining the Judgment, Townes filed its Motion for Issuance of Writ of Garnishment for Appointment of Receiver ("**Receiver Motion**"). The Missouri State Court scheduled a hearing to consider the appointment of a receiver for April 6, 2015 (i.e., the Petition Date).

**B.      The Bankruptcy.**

14.     Shortly after the Petition Date, the Debtors filed a number of motions seeking emergency first-day relief.[6]

15.     On April 8, 2015, the Court held a preliminary hearing on the motions filed by the Debtors ("**First Day Hearing**"). At the First Day Hearing, the Debtors' representative, Charles T. Lake II, testified, among other things: (i) that the Bankruptcy Cases were filed to avoid the appointment of a receiver, (ii) that the Debtors did not intend to file a plan of reorganization but rather a plan of liquidation, (iii) that the Debtors were not receiving any pressure from any of its other creditors, and (iv) that the Debtors did not currently know of any parties interested in purchasing the Debtors' assets.

---

[6] *See generally* Declaration of Charles T. Lake II in Support of First Day Pleadings [Docket. No. 4].

16.     The Debtors and Townes were ultimately able to reach an interim agreement related to the Debtors' use of cash collateral. The terms of that agreement were ultimately memorialized in the Interim Order (A) Authorizing Debtor to Use Cash Collateral Pursuant to 11 U.S.C. §§ 105 and 363(c)(2) and (B) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 dated April 10, 2015 [Docket No. 19] ("**Cash Collateral Order**"). In addition to other forms of adequate protection, the Cash Collateral Order requires the Debtors to pay to Townes an adequate protection payment of $20,000 within seven (7) days of the entry of the Cash Collateral Order. The Cash Collateral Order was entered on April 10, 2015 and thus the payment was due on April 17, 2015; yet, no payment was received.

### RELIEF REQUESTED

17.     By this Motion, Townes seeks the entry of an order, pursuant to 11 U.S.C. §§ 1112(b) and/or 305(a), dismissing the Debtors' bankruptcy cases for cause and/or in the best interest of the Debtors and its creditors. Townes further requests that such dismissal be with prejudice pursuant to 11 U.S.C. § 349(a) of the Bankruptcy Code.

### ARGUMENT AND AUTHORITY

**I.     The Bankruptcy Cases Should Be Dismissed for "Cause" Pursuant to Section 1112(b) of the Bankruptcy Code.**

18.     "[O]n request of a party in interest, and after notice and a hearing, the court *shall* convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause." *See* 11 U.S.C. § 1112(b)(1) (emphasis added). Section 1112 includes a non-exhaustive list of what constitutes "cause." *See* 11 U.S.C § 1112(B)(4)(A)-(P); *see also Official Comm. of Unsecured Creditors v. Nucor Corp. (In re SGL Carbon Corp.)*, 200

F.3d 154, 160 (3d Cir. 1999). In addition to the list enumerated in Section 1112(b)(4), cause exists to dismiss a case when the petition was filed in bad faith. *See In re 15375 Memorial Corp.*, 589 F.3d 605, 618 (3d Cir. 2009); *SGL Carbon Corp.*, 200 F.3d at 160; *In re Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986).

> **A.    Cause exists to dismiss the Bankruptcy Cases because they were filed in bad faith.**

19.    Bankruptcy petitions are "subject to dismissal under 11 U.S.C. § 1112(b) unless filed in good faith and the burden is on the bankruptcy petitioner to establish good faith." *See 15375 Memorial Corp.*, 589 F.3d at 618; *NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.)*, 384 F.3d 108, 118 (3d Cir. 2004); *SGL Carbon Corp.*, 200 F.3d at 162 n.10; In *re JER/Jameson Mezz Borrowers II, LLC*, 461 B.R. 293, 298 (Bankr. D. Del. 2011). The determination of "[w]hether the good faith requirement has been satisfied is a 'fact intensive inquiry' in which the court must examine 'the totality of facts and circumstances' and determine where a 'petition falls along the spectrum ranging from the clearly acceptable to the patently abusive.'" *15375 Memorial Corp.*, 589 F.3d at 618; *Little Creek Dev. Corp.*, 779 F.2d at 1072 ("Determining whether the debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities.). In determining whether "good faith" exists, the Third Circuit utilizes "an objective analysis of whether the debtor has sought to step outside the 'equitable limitations' of Chapter 11 than the subjective intent of the debtor." *See 15375 Memorial Corp.*, 589 F.3d at 618 n.8; *JER/Jameson Mezz Borrower II, LLC*, 461 B.R. at 298 (specifically rejecting the Second Circuit's emphasis on the

subjective good faith of the Debtor and emphasizing the Third Circuit's "objective analysis" standard).

20.     The Third Circuit has specified two requirements for a debtor to prove that its petition was filed in "good faith." First, the bankruptcy petition must "serve[] a valid bankruptcy purpose." *See Integrated Telecom Express, Inc.*, 384 F.3d at 120.; *15375 Memorial Corp.*, 589 F.3d at 618; *SGL Carbon Corp.*, 200 F.3d at 165. Second, the bankruptcy petitions cannot be filed "merely to obtain a tactical litigation advantage." *See 15375 Memorial Corp.*, 58 F.3d at 618. Because the Bankruptcy Cases do not serve a valid bankruptcy purpose and were filed solely to obtain a tactical litigation advantage, the Court should dismiss each of the cases, with prejudice.

> i.      *The Bankruptcy Cases serve no valid bankruptcy purpose.*

21.     Neither of the purposes submitted by the Debtor—(i) to avoid collection efforts and the appointment of a state court receiver, and (ii) file an adversary proceeding to avoid Townes' liens—is a valid bankruptcy purpose. The proper purpose for commencing a Chapter 11 case is "preserving going concerns and…maximizing property available to satisfy creditors." *See Integrated Telecom Express, Inc.*, 384 F.3d at 119 (citing *Bank of Am. Nat'l Trust & Sav. Assn. v. 203 N. LaSalle St. P'Ship,* 526 U.S. 434, 453, 119 S. Ct. 1411 (1999)). When the debtor lacks a "valid bankruptcy purpose" for its filing, a presumption arises that the case was not filed in good faith. *See 15375 Memorial Corp.*, 589 F.3d at 618 (3d Cir. 2009) (a relevant question in determining questions of good faith is "whether the petition serves a valid bankruptcy purpose"); *Integrated Telecom Express, Inc.,* 384 F.3d at 118; *see also In re Mirant Corp.*, 03-46590, 2005 WL 2148362 (Bankr. N.D. Tex. Jan. 26, 2005); *Cedar Shore Resort, Inc. v. Mueller (In re*

*Cedar Shore Resort, Inc.)*, 235 F.3d 375 (8th Cir. 2000) (case dismissed because avoiding litigation was not a valid bankruptcy purpose); *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 829 (9th Cir. 1994) (case dismissed because filing bankruptcy to avoid posting an affordable appeal bond was bad faith).

22.    In order to carry its burden that the chapter 11 case maximizes the value of the entity, the Debtor must show that there is "some value that otherwise would be lost outside of bankruptcy." *See Integrated Telecom*, 384 F.3d at 120; *In re JER/Jameson Mezz Borrowers II, LLC*, 461 B.R. 293, 303 (Bankr. D. Del. 2011).  Put another way, to "maximize property of the estate" the bankruptcy must "create or preserve some value that would be lost—not merely distributed to a different stakeholder—outside of bankruptcy. *Integrated Telecom*, 384 F.3d at 129. The Debtors' representative testified at the First Day Hearing that the Debtor did not intend to file a plan of reorganization but rather a plan of liquidation. As such, the Debtors have admitted that the purpose of the bankruptcy is merely to change the entity liquidating the Debtors from a third-party receiver to current management.

23.    Moreover, the Debtors cannot carry their burden of proving that the Bankruptcy Cases will maximize property of the estate because they have known of the need to refinance the Promissory Note but failed to do so. When a debtor had knowledge that it needed to refinance, had sufficient time to do so, but failed to refinance the debtor or sale the assets, it is unlikely that a bankruptcy filing will enhance the chances of finding financing or a buyer. *See JER/Jameson Mezz Borrowers II, LLC*, 461 B.R. at 303. In *JER/Jameson Mezz Borrowers II, LLC*, the debtors had known for over three years of the need to refinance the debt or sell the enterprise, had made several efforts, but had

been unable to achieve either. *See id.* at 303. The bankruptcy court ultimately determined that based upon those facts "it is unlikely that the bankruptcy filing will enhance their chances of finding financing or a buyer." *See id.* Similarly, the Debtors in the subject Bankruptcy Cases have known since February 23, 2012 that they were in default of the Loan Agreement and Promissory Note and that they likely needed to refinance or sell. Moreover, the Missouri State Court expressly found that the Debtors have not made any payments on the Promissory Note since at least October 8, 2013. Consequently, the Debtors have known for at least eighteen months (and likely much longer) that they needed to refinance the debt or sell, yet they have not been able to do either. Further, when asked whether the Debtors currently had any prospects for the purchase of the Debtors' assets, the Debtors' representative responded that they did not currently have any prospects. Therefore, the Debtors cannot carry their burden that their bankruptcy petitions were filed to "maximize value."

24.     Without the prospect of any potential purchaser, the Debtors' proffered purpose for filing bankruptcy boils down to its desire to halt state-law collection efforts using the automatic stay and to substitute an alternative process of liquidating and distributing the Debtors' assets that the Debtors believe will be more favorable to its current equity interest holders. The Third Circuit has consistently held that a naked desire to obtain the protections of the automatic stay is not a valid justification for seeking bankruptcy relief. *See 15375 Memorial,* 589 F.3d at 620; *In re Integrated Telecom,* 384 F.3d at 128. Because the Debtors have admitted that their purpose for filing was to invoke the automatic stay and substitute their own liquidation for that of a receiver, the

Court should dismiss the Bankruptcy Cases as a bad faith filing because such a purpose is not a valid bankruptcy purpose.

      ii.      *The Bankruptcy Cases were filed primarily to obtain a tactical litigation advantage.*

25.    It is undisputed that the Debtors filed their cases to obtain a tactical litigation advantage. In fact, it is the only purpose of the bankruptcy petitions and thus the Court should dismiss the Bankruptcy Cases. A chapter 11 case is subject to dismissal if it was commenced primarily to obtain a tactical litigation advantage. *See 15375 Memorial*, 589 F.3d at 605; *SGL Carbon*, 200 F.3d at 165; *JER/Jameson Mezz Borrowers II, LLC*, 461 B.R. at 300. In this case, the Court need not speculate about whether the Bankruptcy Cases were filed to obtain a tactical litigation advantage, the Debtors admit as much in their Cash Collateral Motion.[7] In the Cash Collateral Motion, the Debtors telegraphed that they intended to "file an adversary action to avoid [Townes'] liens as having been perfected within 90 days of the Petition Date."[8] More blatantly though, at the First Day Hearing, the Debtors' representative admitted that the Bankruptcy Cases were filed to avoid the appointment of a receiver. Without the filing of the Bankruptcy Cases, the perfection of Townes' liens is not at issue.[9] The State Court rightfully determined that Townes has valid liens on practically all of the Debtors' property. Similarly, without the Bankruptcy Cases and the effect of the automatic stay, the Missouri State Court would have appointed a receiver. The Debtors' abuse of the bankruptcy process to obtain a

---

[7] Debtor's Motion for Interim an Final Order: (A) Authorizing Debtors to Use Cash Collateral Pursuant to 11 U.S.C. §§ 105 and 363(c)(2); and (B) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 [Docket. No. 9] ("**Cash Collateral Motion**").

[8] *See* Cash Collateral Motion at ¶ 4.

[9] Townes believes that regardless of the fact that the Debtors filed for bankruptcy, its liens are valid and that it has valid defenses to the adversary and avoidance causes of action alleged by the Debtors.

tactical litigation advantage constitutes bad faith and the Court should accordingly dismiss, with prejudice.

> iii.    *An analysis of the traditional "bad faith" factors indicates the Bankruptcy Cases were not filed in good faith.*

26.    In order to assist in determining whether a case was filed in bad faith, courts often look for evidence of various factors, including: (i) single asset case; **(ii) few unsecured creditors**; (iii) no ongoing business or employees; **(iv) petition filed on eve of foreclosure**; **(v) two party dispute which can be resolved in pending state court action**; **(vi) no cash or income**; **(vii) no pressure from non-moving creditors;** (viii) previous bankruptcy petition; (ix) prepetition conduct was improper; **(x) no possibility of reorganization;** (xi) debtor formed immediately prepetition; **(xii) debtor filed solely to create automatic stay;** and **(xiii) subjective intent of the debtor.** *See Primestone Inves. Partners L.P. v. Vornado PS, L.L.C. (In re Primestone Inves. Partners L.P.)*, 272 B.R. 554, 557 (Bankr. D. Del. 2002) (emphasis added); *JER/Jameson Mezz Borrowers II, LLC*, 461 B.R. at 298-99; *accord In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394-95 (11th Cir. 1988); *In re Little Creek Dev. Co.*, 779 F.2d at 1072. No single factor should dictate, but rather it is the totality of the circumstances that determines whether to dismiss. *See Primestone*, 272 B.R. at 558; *In re Natural Land Corp.*, 825 F.2d 296, 298 (11th Cir. 1987) (holding there is no "single factor that will necessarily lead to a finding of bad faith"); *In re American Property Corp.*, 44 B.R. 180, 182 (Bankr. M.D. Fla. 1988) ("no one factor...determinative of good faith.").

27.    Here, a majority of the factors are patently present. The Debtors' Consolidated List of Creditors Holding 20 Largest Unsecured Claims (which includes practically all of the Debtors' creditors), lists claims of approximately $35,000, exclusive

of the claims of Townes and Insiders. The Debtors filed these Bankruptcy Cases on the eve of the hearing to appoint a receiver over the Debtors. Undoubtedly, this case is a two-party dispute and the Debtors' cash collateral and projected cash-flow budgets show that there is little prospect of increasing cash and that multiple of the Debtors are reliant on TOFMTC to support them. Finally, the Debtors' representative testified that prepetition it was not receiving any pressure from creditors other than Townes and that the Bankruptcy Cases were filed to avoid the appointment of a receiver.

28.    Perhaps most importantly, the Debtors' representative admitted that the Debtors do not intend to file a plan of reorganization, but a plan of liquidation. Nevertheless, even if the Debtors were to propose a plan of reorganization, they could not confirm such a plan over the objection and negative vote of Townes. In order to confirm a plan, the Debtors would need to have at least one impaired, accepting class. *See* 11 U.S.C. § 1129(a)(10). Even if the Debtors were ultimately successful in avoiding Townes' liens,[10] Townes' liquidated claim would make it impossible for the Debtors to confirm a plan of reorganization because Townes' claim would make it impossible for the unsecured class to accept the plan. *See* 11 U.S.C. § 1126(c) (requiring at least two-thirds in amount and more than one-half of the allowed claims of a class to vote in favor of the plan for the class to accept the plan). Alternatively, if Townes' liens are not avoided, the Debtors will not be able to confirm a plan that is "fair and equitable" with respect to Townes. Consequently, the Debtors have no possibility of reorganization. This factor, combined with the Debtors' failure to put forth a valid bankruptcy purpose and the

---

[10] Nothing contained herein shall be construed as an admission by Townes that it believes such avoidance action would be successful or has merit. Townes expressly reserves any and all defenses, claims and arguments it may have against any such avoidance action.

other *indicia* of bad faith, leads to the inevitable conclusion that the Debtors' cases were filed in bad faith and the Court should thus dismiss.

   **B.    Cause exists to dismiss the case because of the Debtor's inability to and lack of desire to effectuate a plan of reorganization.**

   29.    Section 1112(b)(4) provides that cause includes: "substantial and continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." *See* 11 U.S.C. 1112(b)(4)(A). At the First Day Hearing, the Debtors' representative admitted that the SHCTV and OFMLD debtors do not have positive cash flow and that TOFMTC supports and props up these other debtors. Additionally, the Debtors' representative testified that TOFMTC is predominantly the operating company and that NWMHC makes its money by collecting management fees from the subsidiaries. Townes does not consent to the use of its cash collateral to fund the Debtors' legal fees and thus the Debtors' estate faces a serious threat or loss or diminution resulting from the accrual of chapter 11 administrative expenses. For the reasons already stated above— Debtors cannot satisfy Section 1129(a)(10), or Section 1129(b)—cause exists to dismiss the cases because the Debtors are unable to effectuate a plan of reorganization. As a result, even if the Debtors' cases were filed in good faith, dismissal would be mandatory because cause exists pursuant to Section 1112(b)(4).

   **C.    Cause exists to dismiss the case because the Debtors violated the Cash Collateral Order.**

   30.    The Debtors' failure to make the adequate protection payment as required by the Cash Collateral Order constitutes "cause" to dismiss the Bankruptcy Cases. Section 1112(b)(4)(e) specifically states that "cause" includes "failure to comply with an order of the court." *See* 11 U.S.C. § 1112(b)(4)(e). The Cash Collateral Order clearly

requires and orders the Debtors to make an adequate protection payment in the amount of $20,000 by April 17, 2015 ("within seven (7) days of the entry of the [Cash Collateral Order]"). The Debtors did not make the payment by the deadline and thus they violated this Court's order. This additional ground for "cause" is further justification for why the Court should dismiss the Bankruptcy Cases.

        **D.**      **The Debtors' use of cash collateral without making the adequate protection payment constitutes an unauthorized use of cash collateral.**

        31.      Section 1112(b)(4)(D) defines "cause" as including "unauthorized use of cash collateral substantially harmful to 1 or more creditors." *See* 11 U.S.C. § 1112(b)(4)(D). Townes consented to the Debtors' temporary interim use of its cash collateral only after an agreement was reached whereby the Debtors agreed to provide Townes with adequate protection as required by the Bankruptcy Code. *See* 11 U.S.C. § 363(c)(2) (a debtor in possession may not use cash collateral without consent of the party that has an interest in the cash collateral, or the court authorizes such use in accordance with other provisions of this section). Thus, the Debtors' authority to use cash collateral (based upon Townes' consent) was expressly conditioned upon it providing the adequate protection negotiated for and specified in the Cash Collateral Order, including the $20,000 payment. As a result, the Debtors' use of cash collateral without making the adequate protection payment constitutes an unauthorized use of cash collateral because the Debtors did not comply with the agreed upon terms. Because unauthorized use of cash collateral statutorily constitutes "cause," the Court should dismiss the Bankruptcy Cases.

II.    **Alternatively, the Court Should Abstain from Hearing this Case and Dismiss it Pursuant to Section 305(a) of the Bankruptcy Code.**

32.    Section 305(a)(1) of the Bankruptcy Code provides that a court, "after notice and hearing, may dismiss a case under this title or may suspend all proceedings in a case under this title, at any time if…the interest of creditors and the debtor would be better served by such dismissal." *See* 11 U.S.C. § 305(a)(1). The decision to dismiss a bankruptcy case under section 305(a)(1) is left to the discretion of the bankruptcy judge and is not reviewable on appeal. *See* 11 U.S.C. § 305(c); *In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 463 (Bankr. S.D.N.Y. 2008); *Pennino v. Evergreen Presbyterian Ministries (In re Pennino)*, 299 B.R. 536, 538 (B.A.P. 8th Cir. 2003); *Steinman v. Spencer (In re Argus Group 1700)*, 206 B.R. 737, 755 (Bankr. E.D. Pa. 1996). Because Townes is the party seeking dismissal alternatively pursuant to section 305(a)(1), it bears the burden of demonstrating that the interests of the Debtors and its creditors would benefit from dismissal. *See In re AMC Investors, LLC*, 406 B.R. 478, 487 (Bankr. Del. 2009); *Monitor Single Lift I,* 381 B.R. 462-63.

33.    Like determining "good faith" under Section 1112(b), courts look at a number of factors to determine whether abstention and dismissal under Section 305(a)(1) is in the best interest of creditors. *See AMC Investors, LLC*, 406 B.R. at 488. Such factors include: (i) the economy and efficient administration; (ii) whether another forum is available to protect the interests of both parties of there is already a pending proceeding in state court; (iii) whether federal proceedings are necessary to reach a just and equitable solution; (iv) whether there is an alternative means of achieving equitable distribution of assets; (v) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (vi) whether a non-

federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (vii) the purpose for which bankruptcy jurisdiction has been sought. *See id.*; *In re Paper I Partners, L.P.*, 283 B.R. 661, 679 (Bankr. S.D.N.Y. 2002); *Argus Group 1700, Inc.*, 206 B.R. at 755. Practically all of the factors weigh in favor of abstention and dismissal. A state court receiver will be more economical and efficient because it does not have to address the numerous provisions and requirements of the Bankruptcy Code. *See In re Argus Group 1700, Inc.*, 206 B.R. at 756 (finding that bankruptcy likely causes "needless additional expenses" because the debtors would need to be represented by specialized bankruptcy counsel).[11] A state court receiver is an alternative means for achieving an equitable distribution of assets and is evidence that federal proceedings are not necessary to reach a just and equitable solution. *See Monsour Medical Ctr., Inc. v. Stein (In re Monsour Medical Ctr., Inc.)*, 154 B.R. 201, 203 (Bankr. W.D. Pa. 1993) (dismissing case under section 305(a)(1) to allow state court receivership to proceed primarily because it appeared no plan would be confirmable without the support of the party seeking dismissal under section 305(a)(1)).

34.     Unlike the analysis related to "bad faith" under Section 1112(b), the Debtors' subjective intent for filing bankruptcy should be considered in determining whether to dismiss pursuant to Section 305(a)(1). As explained herein, the Debtors' admitted purpose of filing—avoid the appointment of a receiver and state court collection

---

[11] Townes would note that the Debtors have already filed applications to employ three separate law firms and requests in its application to employ ordinary course professionals other consultants and advisors in addition to the three law firms. The Debtors have also indicated that they will seek to retain a financial advisor or investment banker in relation to the Bankruptcy Cases.

efforts—is not a valid bankruptcy purpose and justifies dismissal under Section 305(a)(1). *See In re Fast Food Props., Ltd. #1*, 5 B.R. 539, 540 (Bankr. C.D. Cal. 1980).

35.     Finally, courts in this district have held that "[d]ismissal or suspension of a case may be appropriate when the bankruptcy case constitutes a two-party dispute between the debtor and a single creditor." *See AMC Investors, LLC*, 406 B.R. at 488. Moreover, when relief is available in a non-bankruptcy forum to resolve a two-party dispute, courts should abstain and dismiss the case. *Id.* As described above, relief is available in a non-bankruptcy forum—the appointment of a receiver by the Missouri State Courts—that is substantially similar to what the Debtors are proposing to do in this case, except more economical and efficient. Consequently, this Court should abstain and dismiss the Debtors' Bankruptcy Cases.

**III.     Dismissal of the Chapter 11 Case Should Be With Prejudice Pursuant to Sections 105(a) and 349(a) of the Bankruptcy Code.**

36.     Section 349 of the Bankruptcy Code specifies: "[u]nless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under title, except as provided in section 109(g) of this title." *See* 11 U.S.C. § 349(a). Section 105(a) of the Bankruptcy Code allows courts to "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, *or to prevent an abuse of process.*" *See* 11 U.S.C. § 105(a) (emphasis added). Reading these two statutes together, courts have found that they may dismiss a chapter 11 case with prejudice and proscribe subsequent filing, where the debtor has commenced its bankruptcy case for an improper purpose and in bad faith. *See*

*In re Casse*, 198 F.3d 327, 336-39 (2d Cir. 1999); *In re JER/Jameson Mezz Borrowers II, LLC*, 461 B.R. at 304. Cause exists in this case because the Debtors' admitted purpose for filing is not a valid bankruptcy purpose. They have no possibility of proposing and confirming a plan of reorganization and the case is primarily a two-party dispute. Like the *JER/Jameson Mezz Borrowers II* case, it is necessary to dismiss this case with prejudice to prevent the Debtors from attempting to file a successive bankruptcy petition in this or some other jurisdiction to forestall or impede the operations of the state court receiver that will likely get appointed once these Bankruptcy Cases are dismissed. The Debtors' bad faith filing provides ample justification for the Court to proscribe the Debtors from seeking further relief under the Bankruptcy Code without first seeking leave of this Court. Accordingly, to prevent further harm to the Debtors' creditors, including Townes, the Court should make its dismissal of the Debtors' chapter 11 cases with prejudice and prospectively enjoin any further filings by the Debtors.

## NOTICE

37.    Notice of this Motion has been provided to: (i) counsel for the United States Trustee for the District of Delaware; (ii) counsel for the Debtor; (iii) all parties who have filed appearances in the Debtors' Bankruptcy Cases; and (iv) each of the creditors listed on the Debtors' creditor matrix.

## CONCLUSION

38.    For the foregoing reasons, Townes respectfully requests entry of an order (i) dismissing the Debtors' Bankruptcy Cases pursuant to §§ 1112(b) and/or 305(a) of the Bankruptcy Code, with prejudice, and (ii) granting such other relief as may be just and appropriate.

Dated:  April 22, 2015
      Wilmington, Delaware

Respectfully submitted,

BARNES & THORNBURG LLP

*/s/ Kevin G. Collins*
David M. Powlen (DE Bar No. 4978)
Kevin G. Collins (DE Bar No. 5419)
1000 N. West Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 300-3434
Facsimile: (302) 300-3456
Email: David.Powlen@btlaw.com
Email: Kevin.Collins@btlaw.com

-and-

PRONSKE GOOLSBY &
KATHMAN, P.C.

Gerrit M. Pronske (*pro hac vice*)
Jason P. Kathman (*pro hac vice*)
2200 Ross Ave., Suite 5350
Dallas, Texas 75201
Telephone: (214) 658-6500
Facsimile: (214) 658-6509
Email: gpronske@pgkpc.com
Email: jkathman@pgkpc.com

**COUNSEL FOR**
**TOWNES MISSOURI, INC.**