IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Crown Village Farm, LLC, | ) | Chapter 11 |
| | ) | Case No. 09-11522 (KG) |
| Debtor. | ) | |

| | | |
|---|---|---|
| Crown Village Farm, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. Proc. No. 09-50947 |
| | ) | |
| ARL, LLC, et al. | ) | **Objection Deadline: June 9, 2009 at 4:00 p.m.** |
| | ) | **Hearing Date: June 16, 2009 at 11:00 a.m.** |
| Defendants. | ) | |

## MOTION TO DISMISS BANKRUPTCY CASE OR, IN THE ALTERNATIVE, FOR ABSTENTION FROM HEARING ADVERSARY PROCEEDING

ARL, LLC ("ARL") and Jerunazargabr, LLC ("Jerunazargabr", and collectively with "ARL", the "Sellers") move pursuant to 11 U.S.C. § 1112(b) to dismiss this bankruptcy case or, in the alternative, for the Court to abstain from hearing the Adversary Proceeding pursuant to 11 U.S.C. § 305(a) and 28 U.S.C. §§ 1334(c)(1) and (2)[1] and, in support thereof, state:

### Introduction

A.     The Bankruptcy Case Should Be Dismissed as a Bad Faith Filing

The *sine quon non* of a bankruptcy case filed in good faith is that the filing was made for the "valid bankruptcy purpose" of preserving a going concern and maximizing the value of property available to satisfy creditors. Here, neither of the two conditions are present. Present in their absence, however, are factors that make the case ripe for

---

[1] The Sellers have filed their Opposition to Debtor's Emergency Motion for an Order Establishing an Expedited Schedule for the Adversary Proceeding and a Motion for Relief from the Automatic Stay to allow the Maryland Litigation (defined below) to proceed. The Sellers incorporate by reference herein that Opposition.

immediate dismissal including the fact that the Debtor filed this bankruptcy case to obtain a tactical litigation advantage by forum shopping to this Court discreet parts of a litigation that has been pending in Montgomery County, Maryland (the "Maryland Litigation").

In an attempt to clothe this case with legitimacy the Debtor, in a cleverly choreographed fashion, presented this Court with a neatly wrapped package that makes this look like a valid, proper bankruptcy case. However, pulling away the layers the Court will find that the Debtor, in quick succession after the Petition Date: (i) filed a limited adversary proceeding against only two of the eight existing parties to the Maryland Litigation and in it sought relief with respect to only 2 of the myriad of issues presented in the Maryland Litigation,[2] (ii) filed a motion seeking approval of emergency bidding procedures with a compressed time frame designed to sell its only asset, the Real Estate, to its parent corporations, (iii) created a purported sale and auction process that can not result in proper advertising or real bids, (iv) consented in advance to relief from stay in favor of Bank of America (but not the Sellers or Crown Retail) so as to create a false emergency, (v) filed a plan of liquidation that must be confirmed no later than August 31, 2009, and that is conditioned upon an order of the Court holding that the Seller's claims are general unsecured claims, and (vi), sought approval of a DIP loan from its parent corporations to pay Bank of America debt service on an undersecured loan (for which its parent corporations issued a limited guaranty.

---

[2] The Debtor has filed a Notice of Removal of the Maryland Litigation to the United States Bankruptcy Court for the District of Maryland and a motion to transfer venue to this Court. The Sellers will file a motion to remand the Maryland Litigation to the Circuit Court of Maryland for Montgomery County because, *inter alia,* there is no federal or diversity jurisdiction over the Maryland Litigation. Accordingly, mandatory abstention of the Maryland bankruptcy court (and this Court) and remand are proper.

By so limiting the Adversary Proceeding, the Debtor has brought to this Court only a small slice of the Maryland Litigation, in which all parties necessary to the resolution of all issues are already joined. If this bankruptcy case were to proceed as the Debtor intends, the Debtor will have succeeded in creating a procedural litigation nightmare, with the likelihood of inconsistent verdicts a virtual certainty, while obtaining reduced guaranties for insiders and simultaneously allowing those insiders to take title to the Real Estate for a price that is *less* than its appraised value.

The Maryland Litigation (which is the only reason the Debtor filed this case) concerns the claims against, rights to and interests in the Debtor's sole asset, 178 acres of undeveloped real estate in Montgomery County, Maryland (the "Real Estate"). The Debtor acknowledges in its filing papers that Bank of America is undersecured in the Real Estate by at least $63 million – the Debtor thus has no interest in the outcome of the litigation. Instead, only the parties alleging the disputed interests in the Real Estate have an interest in the outcome; those parties are the Sellers, Crown Farm Retail, LLC and Bank of America, each of whom asserts varying types of liens and/or ownership interests in all or some of the Real Estate. The Maryland Litigation has been proceeding apace, with preliminary motions having been completed and a hearing on the motions pending when the Debtor filed its bankruptcy petition.

In all of its bluster about exigency, the Debtor has failed to share with the Court that in its own offering memorandum for sale of the Real Estate, it acknowledges that Crown Retail and the Sellers own portions of the Real Estate that the Debtor now seeks to sell to its insiders, with all proceeds going to Bank of America. A copy of the Debtor's Offering Memorandum with respect to the Real Estate is attached hereto as Exhibit A. At

3

pages 6 and 8, the Debtor acknowledges Crown Retail's and the Sellers' retained ownership interests in portions of the Real Estate. The Debtor cannot sell that which it does not own, yet that is what the Debtor is attempting to do via its plan, with this Court's imprimatur.

Other than the parties already joined in the Maryland Litigation (who all assert ownership rights in or secured claims to the Real Estate), the Debtor has only one creditor, a Maryland based broker who is expected to assert an unsecured claim against the Debtor. To make this appear to be a valid reorganization, the Debtor manufactured a "plan" that contemplates a sale of property portions of which it previously acknowledged it doesn't own, then a distribution of the proceeds of that sale (even if the Debtor's insiders buy the property) not to the parties that own the property, but rather to Bank of America. As for the Sellers and Crown Retail, they are to be wiped out. Why would a debtor who, when insolvent, is supposed to act as a fiduciary for all of its creditors choose to align itself only with one, namely Bank of America? Because the "plan" provides for the release and/or substantial reduction of the guaranties of the Debtor's parent entities to Bank of America. Thus, the Debtor (directed and controlled by its parents) and Bank of America manufactured a false emergency to try to deprive the other parties to the litigation of their due process rights. The Debtor filed this bankruptcy case solely to benefit its insider owners and Bank of America.

The Debtor has no employees, no day-to-day business operations and no cash or income.[3] The legal disputes at issue (to the extent there really are any that concern the

---

[3] Though it has no operations or need for money, other than to prosecute this bad faith bankruptcy case, the Debtor seeks to borrow an extraordinary amount of money, approximately $5 million, from an insider DIP lender who has agreed to subordinate its DIP liens to Bank of America, but not to the Sellers or Crown Retail. The Debtor proposes to use the DIP funds primarily to pay the undersecured Bank of America loan,

4

Debtor as opposed to the 3 interested parties) are set to be resolved in the pending Maryland Litigation; the disputes are all to be decided pursuant to applicable Maryland state law. The Debtor has no possibility of reorganization because *there is nothing for the Debtor to reorganize.* Instead, the Debtor filed this case to gain its litigation advantage, and preclude the parties whose rights are superior to Bank of America from receiving a penny.

The Debtor's plan with Bank of America and the unilateral, arbitrarily created exigency reeks of bad faith exposing the Debtor's subjective intent. The Court should dismiss this case. Indeed, so blatant is the Debtor's bad faith that the Court would be justified in dismissing this case *sua sponte,* without forcing the parties to spend hundreds of thousands of dollars in litigation costs in a case that has no bankruptcy purpose.

**B.    Under no Circumstances Should the Court Entertain the Adversary Proceeding**

Alternatively, if the Court were not to dismiss this bankruptcy case in its entirety, 28 U.S.C. Section 1334(c)(2) requires that this Court abstain from hearing the Adversary Proceeding.    Not explained in any of the many papers the Debtor has filed is why it chose to institute an adversary proceeding that took only a small slice of the Maryland Litigation and brought it to this Court when, in fact, the Maryland Litigation subsumes the legal issues and claims raised in the Adversary Proceeding, and when by all standards the disputes between the real parties in interest should and must be heard by the Maryland state court. Section 1134(c)(2) requires mandatory abstention of the Adversary Proceeding. The Maryland Litigation *could not* have been brought in a federal court, and thus neither it nor any part of it can be brought in this Court.    The causes of action

---

even though it is not entitled to payment under applicable bankruptcy law because of the severe lack of equity. The Sellers will be opposing the Debtor's DIP motion.

asserted in the Adversary Proceeding, like the remainder of the Maryland Litigation, do not contain any federal questions. Though the amounts in dispute exceed the $75,000 minimum amount necessary to obtain diversity jurisdiction, there is not complete diversity of parties in the Maryland Litigation.

The Maryland Litigation and the Adversary Proceeding are based solely on Maryland state law causes of action that are to be decided solely by application of Maryland law. Because the Maryland Litigation cannot properly be removed to a federal court in the first instance, 28 U.S.C. Section 1334(c)(2) dictates that the federal court where such action is removed abstain from hearing it. Because the Adversary Proceeding contains just a small piece of the Maryland Litigation (just that piece for which the Debtor wants a quick decision) this Court must abstain from hearing the Adversary Proceeding.

The Debtor has engaged in blatant forum shopping. The Adversary Proceeding fails to name all necessary parties. Moreover, the only nexus between the Adversary Proceeding, and indeed the Bankruptcy Case itself, and this forum is the state of formation of the Debtor. In this instance, as more thoroughly explained below, any nexus is fleeting. Therefore, even if the Court finds that abstention is not mandatory, the Court should exercise its discretion to abstain from hearing this Adversary Proceeding and instead allow the Maryland Litigation to proceed.

## Argument

### A.    The Bankruptcy Case Must Be Dismissed as a Bad Faith Filing

The United States Court of Appeals for the Third Circuit has consistently held that Chapter 11 bankruptcy petitions are subject to dismissal under 11 U.S.C. § 1112(b)

unless filed in good faith. *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 118 (3rd Cir. 2004); *In re SGL Carbon Corp.*, 200 F.3d 154, 159-62 (3rd Cir. 1999); *Solow v. PPI Enters. (U.S.), Inc. (In re PPI Enters. (U.S.), Inc.)*, 324 F.3d 197, 210-211 (3rd Cir. 2001) ("[B]ankruptcy courts may dismiss Chapter 11 filings for 'cause' if a petition is filed in 'bad faith'"). Once at issue, the burden falls on the debtor to establish that its petition has been filed in good faith. *SGL Carbon*, 200 F.3d at 162. The good faith requirement ensures that the Bankruptcy Code's careful balancing of interests is not undermined by petitioners whose aims are antithetical to the basic purposes of Chapter 11: (1) to preserve going concerns; and (2) to maximize property available to satisfy creditors. *Integrated Telecom Express*, 384 F. 3d at 119, citing to *SGL Carbon*, 200 F.3d at 161-162 and *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999).

Two inquiries are central to the question of good faith: (1) whether the petition serves a valid bankruptcy purpose, *e.g.* by preserving a going concern or maximizing the value of the debtor's estate; and (2) whether the petition is filed merely to obtain a tactical litigation advantage. *Integrated Telecom Express*, 384 F.3d at 119-120, citing to *SGL Carbon*, 200 F.3d at 165. Plans of liquidation, like reorganization plans, must serve a valid bankruptcy purpose, either by preserving some going concern value or by maximizing the value of the debtor's estate. *Id.* at 120. A Chapter 11 petition filed merely to obtain tactical litigation advantages is not within the legitimate scope of the bankruptcy laws. *Id.*, citing to *SGL Carbon*, 200 F.3d at 165.

Whether the good faith requirement has been satisfied is a "fact intensive inquiry" in which the court must examine "the totality of facts and circumstances" and determine

where a "petition falls along the spectrum ranging from the clearly acceptable to the patently abusive." *Id.* at 118, citing to *SGL Carbon*, 200 F.3d at 162. While no list is exhaustive of all the factors that could be relevant when analyzing good faith, courts typically review the record for evidence of various factors, including: (1) single asset case; (2) few unsecured creditors; (3) no ongoing business or employees; (4) petition filed on eve of foreclosure; (5) two party dispute which can be resolved in pending state court action; (6) no cash or income; (7) no pressure from non-moving creditors; (8) previous bankruptcy petition; (9) pre-petition conduct was improper; (10) no possibility of reorganization; (11) debtor formed immediately prepetition; (12) debtor filed solely to create automatic stay; and (13) subjective intent of the debtor. *PPI Enters.*, 324 F.3d at 211; *In re Primestone Investment Partners L.P.*, 272 B.R. 554, 557 (D.Del. 2002).

In this case, the Debtor seeks to effect an insider fire sale of the Real Estate to its corporate parents at the lowest possible price, in the worst real estate market in modern times, in direct contravention of Bankruptcy Code's underlying principles. The Debtor is indisputably not a going concern. The Debtor has no employees, is not an operating business, generates no income, and owns no assets other than the Real Estate which, by its own admission is under water by more than $60 million. Yet the Debtor's plan improperly ensures benefits only to the Debtor's insiders, not creditors. *Tenn-Fla Partners v. First Union Nat. Bank of Florida*, 229 B.R. 720, 736 (W.D.Tenn. 1999) ("[T]he hierarchy of the Bankruptcy Code provides that the interests of creditors are paramount to the interests of the equity holders, and a trustee must act in accordance with this hierarchy"); *In re American HomePatient, Inc.*, 298 B.R. 152, 163 (Bankr.M.D.Tenn. 2003) (undersecured creditor's unsecured claim must be paid in full

before principals of the debtor can receive or retain any interest in the reorganized debtor's property on account of their ownership interest in the bankrupt debtor); 11 U.S.C. § 1129(b)(2)(B). The Debtor is unable or unwilling to proceed with its initially envisioned development of the Real Estate because that would result in the Debtor having to pay more creditors than just Bank of America. In this instance, the Debtor should be eliminated from the process and the parties asserting claims to the Real Estate should have their disputes resolved in a court of competent jurisdiction which, in this instance and with all due respect to this Court, is the court in Montgomery County, Maryland.

The Debtor has failed and will be unable to establish the first element of good faith, namely that its petition serves to maximize the value of the bankruptcy estate. Said another way, the Debtor must show that the petition preserves some value that otherwise would be lost outside of bankruptcy. *In re 15375 Memorial Corp.*, 400 B.R. 420, 427 (D.Del. 2009); *Integrated Telecom Express*, 384 F.3d at 120-121, citing to Collier on Bankruptcy ¶ 1108.12 ("[W]here liquidation is appropriate, the Code contemplates orderly liquidation and not a 'fire sale.'"). This fire sale process to the Debtor's insiders ensures that the Real Estate will draw the lowest value it will likely ever have. In fact, seeking bids for the Real Estate on a quick basis is likely to result in no bids at all, all but making it a certainty that the Debtor's insiders will get the asset cheap and creditors, other than Bank of America, will get nothing.

A debtor properly exercising its fiduciary duties would not seek a rush sale to its insiders at a ridiculously low price; instead, it would delay the process until the real estate market returns and the Debtor has taken all steps necessary to increase the value of the Real Estate by, *inter alia*, recording the completed record plats in Montgomery County,

9

Maryland, an act that will immediately increase the Real Estate's value by millions of dollars. We are currently in the worst real estate climate of our time.[4] Yet, the Plan of Liquidation seeks to rush a sale of the Real Estate in less than sixty (60) days. In order to maximize value, before rushing to sell, the Debtor should take the simple and inexpensive steps needed to record the plats that are necessary to fully vest its development rights. The Debtor has failed to provide any explanation for its refusal to finalize and record the respective plats.

The proposed fire sale to insiders deserves extraordinary scrutiny from the Court. *In re Firstmark Corp.*, 46 F.3d 653, 656 (7th Cir. 1995) (citing with approval the district court's statement that "sale of a debtor's property to an insider is subject to close scrutiny"); *In re Summit Global Logistics, Inc.*, 2008 WL 819934 at *11 (Bankr.D.N.J. March 26, 2008) (same); *In re Rickel & Associates, Inc.*, 272 B.R. 74, 100 (Bankr.S.D.N.Y. 2002) ("[S]ales to insiders of the debtor are subject to heightened scrutiny."); *In re Global Ocean Carriers Ltd.*, 251 B.R. 31, 48 (Bankr.D.Del. 2000), citing to *Beal Bank, S.S.B. v. Waters Edge Ltd. Partnership*, 248 B.R. 668, 680 (D.Mass. 2000) (insider private transactions proposed by Chapter 11 plan require greater scrutiny by the bankruptcy court to ensure fairness); *In re Biderman Indus. U.S.A., Inc.*, 203 B.R. 547, 551 (Bankr.S.D.N.Y. 1997) (sales to fiduciaries in chapter 11 cases are not per se prohibited, "but [they] are necessarily subject to heightened scrutiny because they are rife with the possibility of abuse"). The purported "stalking horse" is not an independent third-party purchaser. Instead, the stalking horse is a new entity comprised of the Debtor's parents, KB Homes, Inc. ("KB") and Centex Homes ("Centex") , seeking to

---

[4] The Debtor itself has previously recognized that "the current economic decline ... makes large-scale real estate development impracticable." Motion to Dismiss filed in the Maryland Litigation, pg. 7.

take the disputed real estate away from the parties who the Debtor has acknowledged have legal and/or equitable title to it. If this happens, the next step will be for KB and Centex to record the plats to instantly and dramatically increase the Real Estate's value, without having to give the Sellers and Crown Retail the parcels to which they are entitled or pay the Sellers the approximately $30 million balance due from the original purchase price.

The Debtor cannot demonstrate that the Real Estate possesses some value that would be lost outside of bankruptcy. The Real Estate is already undersecured, and loaded with claims of the 3 disputing parties, that it is difficult to imagine that it could lose more value outside of bankruptcy. The present amount of Bank of America's secured claim and lien on the Real Property is approximately $130 million. The Sellers' secured claim, which Sellers submit has priority over Bank of America, is approximately $30 million, exclusive of Sellers' and Crown Retail's claims to legal title to the commercial property.

An examination of the Debtor's Plan of Liquidation suggests that the petition was not motivated by a desire to maximize the value of the Debtor's estate, but instead by a desire to consummate an insider transaction and improper pay down to Bank of America with the Court's imprimatur. *SGL Carbon*, 200 F. 3d at 167 (stating that the features of a proposed plan can help illuminate the lack of good faith in filing and reasoning that if the probable effect of a reorganization plan is to treat creditors unfairly, then the probable cause of the filing is bad faith). Simply seeking to efficiently distribute assets or filing a liquidation plan cannot *ipso facto* establish good faith. *15375 Memorial*, 400 B.R. at 428; *Integrated Telecom Express*, 384 F.3d at 126 (Bankruptcy Code cannot be used to effect

11

a liquidation that has no hope of maximizing the value of the company, but simply facilitates dissolution on terms favorable to equity interests).

The Debtor now operates as a debtor-in-possession and thus owes and must maintain its fiduciary duty to conduct this bankruptcy case in a transparent manner for the benefit of its creditors and parties possessing an interest in its assets. *In re Marvel Entertainment Group, Inc.* 140 F.3d 463, 471 (3rd Cir. 1998) ("[T]he debtor-in-possession is a fiduciary of the creditors and, as a result, has an obligation to refrain from acting in a manner which could damage the estate, or hinder a successful reorganization."), quoting *Petit v. New England Mort. Servs.*, 182 B.R. 64, 69 (D.Me. 1995). The Debtor at best retains only a bare legal interest in the Real Estate or any proceeds to be produced from its sale. In any valid bankruptcy case there would be no return for the Debtor, its members or parent entities. Through a cleverly conceived scheme between KB, Centex and Bank of America, KB and Centex are essentially assured of receiving an asset for not much more than half price. This bankruptcy case fails to live up to an appropriate standard of transparency or due process.

The Debtor cannot demonstrate that the proposed fire sale can possibly maximize the recovery of funds for the estate and generate any proceeds other than for Bank of America, the other party to the Debtor's scheme. Instead, the Plan will ensure the sale of the Real Property to the Debtor's parents for approximately 50% of the amount of the asserted secured claim of Bank of America, allow the Debtor's parents to obtain concessions from Bank of America on their guaranties, and provide great benefit to Bank of America, without the Maryland Litigation being fairly resolved and the interests of the parties in and to the Real Property being properly and fully adjudicated.

12

**B.    The Bankruptcy is Designed to Create a Tactical Litigation Advantage for the Debtor**

The Debtor's primary objective in filing the petition was to gain a tactical advantage in the Maryland Litigation by re-characterizing and re-filing discreet pieces of the litigation, on its terms and to suit its needs, before this Court. The Debtor's papers are replete with its assertion that the issues and disputes with respect to the Sellers' claims, interests, and liens on the Real Estate must be resolved at light speed so that the Debtor can conduct its similarly hasty sale of the Real Estate to its parent entities. The Debtor's own contentions reveal that this bankruptcy case is simply a tactic by the Debtor, its parents, and Bank of America to gain a litigation advantage by commandeering and moving to this Court, with the hopes of fast-tracking, a subset of the issues raised in the Maryland Litigation.

To benefit only its lender, Bank of America, and its parent entities, who are the guarantors of the Debtor's obligations to Bank of America, the Debtor seeks to obtain its litigation advantage by denying the remaining parties to the Maryland Litigation their due process rights to a fair trial by forcing them to come to this Court and complete the litigation to resolve ownership and lien disputes relating to the Real Estate in about 8 weeks. The Maryland Litigation was properly and appropriately brought in Montgomery County, Maryland, the situs of the Real Property. All issues regarding the Real Property can be resolved by the Maryland Litigation before the Maryland Court, the proper forum. The filing of a bankruptcy petition simply to invoke the automatic stay to stay previously filed litigation does not demonstrate good faith. *15375 Memorial*, 400 B.R. at 428.

**C.    The Court Must Abstain from Hearing the Adversary Proceeding**

**1.    Mandatory Abstention Is Required Under 28 U.S.C. § 1334(c)(2)**

If the Court does not to dismiss this bankruptcy case in its entirety, 28 U.S.C. Section 1334(c)(2) requires that this Court abstain from hearing the Adversary Proceeding. Pursuant to section 1334(c)(2), a court shall abstain from an action if the movant establishes: (1) that it filed a timely motion; (2) the proceeding is based solely on state law issues; (3) the proceeding is related to a case under the Bankruptcy Code, but does not arise under the Bankruptcy Code or in a case under the Bankruptcy Code; (4) there is no independent basis for federal jurisdiction other than the bankruptcy proceeding; (5) an action has been commenced in a state forum; and (6) that case can be timely adjudicated in state court. *In re Holiday RV Superstores, Inc.*, 362 B.R. 126, 130 (D.Del. 2007); *Lead I JV, LP v. North Fork Bank*, 401 B.R. 571, 579 (E.D.N.Y. 2009).

Section 1334(c)(2) mandates abstention from hearing an action that could not have been commenced in a court of the United States because there is no independent basis for jurisdiction other than the bankruptcy proceeding. The Maryland Litigation *could not* have been brought in a federal court, and thus neither the Maryland Litigation, nor any part of it carved out in the Adversary Proceeding, can be brought in this Court. The causes of action asserted in the Adversary Proceeding, like the remainder of issues in the Maryland Litigation, do not contain any federal questions but instead are based solely on, and will be decided exclusively by, Maryland state law, thereby precluding independent federal question jurisdiction (notwithstanding any bankruptcy "related to" jurisdiction). Additionally, the Maryland Litigation lacks complete diversity of parties, thereby defeating diversity jurisdiction. Thus, there is no basis for independent federal jurisdiction for the Maryland Litigation.

The Maryland Litigation was commenced in the state forum approximately six months prior to the time the Debtor filed the bankruptcy petition and the Adversary Proceeding. The Maryland Litigation has been proceeding in the normal course, with the Maryland Court soon expected to hear the pending preliminary motions. The Maryland Court is the appropriate forum for the Maryland Litigation (and by implication, the identical issues raised in the Adversary Proceeding), which can be timely adjudicated according to the schedule issued by the Maryland Court. Moreover, abstention will avoid the risk of inconsistent verdicts between two actions and forums.

     **2.**     **Discretionary Abstention Is Additionally Warranted Under 11 U.S.C. § 305(a) and 28 U.S.C. § 1334(c)(1)**

Permissive abstention in the bankruptcy court is governed by 28 U.S.C. § 1334(c)(1) and 11 U.S.C. § 305(a), which confer discretion upon bankruptcy courts to dismiss or suspend an action should such decision better the interests of the parties. *In re Fornaro*, 402 B.R. 104, 108 (Bankr.D.N.J. 2009); *In re A & D Care, Inc.*, 90 B.R. 138, 141 (Bankr.W.D.Pa. 1988). The decision whether to abstain falls within sound discretion of the court. *Fornaro*, 402 B.R. at 107; *In re Asousa P'ship*, 264 B.R. 376, 391 (Bankr.E.D.Pa. 2001). Thus, even where it has jurisdiction, a bankruptcy court is not compelled to hear a case; the court may, in its discretion, abstain from hearing the matter. *Fornaro*, 402 B.R. at 107-108; *In re P & G Realty Corp.*, 157 B.R. 239, 242 (Bankr.W.D.Pa. 1993).

Under 11 U.S.C. Section 305(a), the bankruptcy court may abstain from hearing a matter if "the interests of creditors and the debtor would be better served by ... dismissal or suspension." Section 305(a) is appropriate when the interests of the creditors and the debtor are best served by dismissal or suspension. *In re 15375 Memorial Corp.*, 382 B.R.

652 (Bankr.D.Del. 2008), *rev'd on other grounds*, *In re 15375 Memorial Corp.*, 400 B.R.

420 (D.Del. Jan 27, 2009); *In re Mazzocone*, 200 B.R. 568 (E.D.Pa. 1996); *In re Monsour*

*Medical Center*, 154 B.R. 201, 206-7 (Bankr.W.D.Pa. 1993).

In applying section 305(a), courts have considered a wide range of factors,

including, but not limited to: (1) who filed the bankruptcy petition; (2) the availability of

another forum to resolve pending disputes; (3) the necessity of federal proceedings to

achieve a just and equitable solution; (4) the expense of the federal proceedings in

comparison with proceedings in another forum; (5) the purpose of the party seeking to

remain in bankruptcy court; and (6) the economy and efficiency of having the bankruptcy

court handle the matter and possible prejudice to other parties. *15375 Memorial Corp.*,

382 B.R. at 686; *Mazzocone*, 200 B.R. at 575;  *See also In re 801 South Wells Street Ltd.*

*Partnership*, 192 B.R. 718, 723 (Bankr.N.D.Ill. 1996);  *In re Realty Trust Corp.*, 143

B.R. 920, 925-926 (D.N.Mariana Islands 1992); *In re Fax Station, Inc.*, 118 B.R. 176,

177 (Bankr.D.R.I. 1990).  The exact factors to be considered and the weight to be given

each of them is highly sensitive to the facts of each individual case.  *Mazzocone*, 200

B.R. at 575.  In evaluating the best interests of the creditors and the debtor, efficiency and

economy of administration are primary considerations. *In re Central Mortg. & Trust,*

*Inc.*, 50 B.R. 1010 (S.D.Tex. 1985), citing to *In re Michael S. Starbuck, Inc.*, 14 B.R.

134, 135 (Bankr.S.D.N.Y. 1981).


Additionally, under 28 U.S.C. Section 1334(c)(1), the Court may, in its discretion,

abstain from hearing a particular proceeding over which it has jurisdiction "in the interest

of justice, or in the interest of comity with State courts or respect for State law."  *In re*

*Dow Corning Corp.*, 86 F.3d 482, 497 (6th Cir. 1996); *In re Pan American Corp.*, 950 F.2d 839, 844 (2nd Cir. 1991); *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1010 (4th Cir. 1986); *Hopkins v. Plant Insulation Co.*, 342 B.R. 703, 710 (D.Del. 2006); *In re Federal-Mogul*, 282 B.R. 301 (Bankr.D.Del. 2002). In determining whether abstention is appropriate, courts consider twelve factors: (1) the effect on the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than section 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence of non-debtor parties. *Holiday RV Superstores*, 362 B.R. at 131 (D.Del., 2007); *In re Amtrol Holdings, Inc.*, 384 B.R. 686, 694 (Bankr.D.Del. 2008); *In re AstroPower Liquidating Trust*, 335 B.R. 309, 330 (Bankr.D.Del. 2005) (quoting *Great Am. Ins. Co. v. Mobile Tool Int'l (In re Mobile Tool Int'l)*, 320 B.R. 552, 556-557 (Bankr.D.Del. 2005)); *Plant Insulation Co.*, 342 B.R. at 710-711;.

The presence of a related proceeding commenced and timely proceeding in a state court forum is a prime consideration in any abstention analysis under section 1334(c)(1) as it underlies the purpose of the statute: respect for federalism. *In re Weldon F. Stump &*

17

*Co.*, 373 B.R. 823 (Bankr.N.D.Ohio 2007).   As described above, the Adversary

Proceeding is nothing more than a slightly repackaged version of, comprised of a subset

of the issues presented in, the Maryland Litigation.   Indeed, the Debtor's complaint

initiating this Adversary Proceeding bears a striking resemblance to and simply

regurgitates certain of the legal arguments contained in the Debtor's Motion to Dismiss

that is pending before the Maryland court.   The interests of all parties-in-interest would

be better served by suspension of this Adversary Proceeding to allow the Maryland

Litigation to proceed.   Likewise, in the interests of justice and comity with the Maryland

Court, this Court should exercise its discretion and abstain from hearing this particular

Adversary Proceeding.   In support of their contention, the Sellers highlight the following

facts:

> 1.      The Maryland court is the appropriate forum to resolve the pending disputes.   The two lawsuits filed against the Debtor by the Sellers and Crown Retail will be consolidated into one action before the Maryland court that will be fully determinative of the rights of all parties-in-interest with respect to the disputes regarding the Real Estate.   All parties necessary to the complete resolution of the Maryland Litigation, including parties not named in the Adversary Proceeding, such as Bank of America, will have been joined together in one action in the same forum. Proceedings before this Court are not necessary for a just and equitable resolution of these disputes and, in fact, for the reasons noted above and in the Sellers' Opposition to Emergency Motion for an Order Establishing an Expedited Schedule, will actually serve to delay the process and create likely inconsistent verdicts.

> 2.      The time and efforts of the parties in this action will be duplicative of the actions taken in the Maryland Litigation.   For example, preliminary motions are at issue in the Maryland Litigation and the parties were awaiting hearing on those motions when the Debtor filed this bankruptcy.   Thus, allowing this action to proceed will only serve to increase the cumulative expenses of litigation.   Economy and efficiency will best be served by suspending this action and allowing the Maryland Litigation to continue.

3.      State law issues predominate over federal/bankruptcy law issues, if any even exist, in the litigation. Maryland state law alone controls the resolution of the disputes among the parties asserting rights to and in the Real Estate. All issues in the Maryland Litigation, and the subset presented in the Adversary Proceeding, will be decided solely by application of Maryland law. This Court's expertise as to matters of bankruptcy law will not be necessary for the resolution of the disputes presented. Complex issues of Maryland real property law remain to be briefed and ruled upon, and, out of respect for our system of federalism, the Maryland court should be allowed to decide these issues. If the Court retains the bankruptcy case, this Court will retain the authority to enforce any judgments entered by the Maryland court.

4.      The sole legal basis for the filing of the bankruptcy petition, and the attempted, attendant relocation of the litigation, in this venue appears to be that the Debtor was formed under the laws of the state of Delaware. While this is not without any meaning, any linkage between this litigation and this forum based on the Debtor's state of formation is tenuous at best. In this instance, its weight should be discounted entirely because of the Debtor's blatant forum shopping. The Debtor has no employees, is not an operating entity, and does not have its principal place of business in Delaware. The Debtor, which owns no assets other than the Real Estate, has no assets in Delaware. Venue of this bankruptcy case would have been more appropriate in the United States Bankruptcy Court for the District of Maryland, Greenbelt Division. *See Innovative Communication Company, LLC, et al.*, 358 B.R. 120 (Bankr. Del. 2006). However, at a minimum, this specific litigation should proceed in the Maryland court.

5.      The locus of these disputes is the Real Estate, located in Montgomery County, Maryland. Montgomery County, the initially chosen venue, is a convenient forum for all of the Parties. State court judges are uniquely qualified to handle real estate disputes regarding real estate located in the jurisdiction of the court. Of course, this Court is entirely capable of resolving the issues raised in the Adversary Proceeding. However, the Sellers aver that it would serve to promote judicial economy to resolve the Maryland Litigation in the Maryland court so as to not distract or burden this Court with tasks unrelated to its core functions. It is entirely appropriate for the Maryland court, with the same situs as the Real Estate, to resolve the Maryland Litigation.

6.      The Debtor chose to file this bankruptcy case after representing to the Sellers during the course of the Maryland Litigation that it had no intention of doing so. The Debtor did not initially seek to remove the Maryland Litigation to United States District Court for the District of Maryland and then seek its transfer to this Court. Instead, the

Debtor chose to subvert this procedure by first filing the Adversary Proceeding then waiting more than a week to start a flawed removal process of the Maryland Litigation. The Adversary Proceeding will not resolve all issues among all parties, making the possibility of inconsistent verdicts in different jurisdictions a distinct possibility. The inescapable conclusion to be drawn from the Debtor's actions is that it initiated this bankruptcy case simply to engage in forum shopping with respect to the Maryland Litigation.

This Court should exercise its discretion and abstain from hearing the Adversary Proceeding because the issues in dispute should be resolved in the Maryland Litigation before the Maryland Court.

### Conclusion

For the reasons stated above, this Court should dismiss this bankruptcy case. In the alternative, the court should abstain from hearing the Adversary Proceeding because the issues in dispute should be resolved in the Maryland Litigation.

Dated: May 14, 2009

COZEN O'CONNOR

Mark E. Felger (No. 3919)
1201 N. Market Street, Suite 1400
Wilmington, DE 19801
Telephone: (302) 295-2000
Facsimile: (302) 295-2013

SHAPIRO SHER GUINOT & SANDLER

Joel I. Sher, Esq.
Richard M. Goldberg, Esq.
36 S. Charles St., Ste. 2000
Baltimore, MD 21201
(410) 385-4234

*Attorneys for Defendants ARL and Jerunazargabr*